CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

MAY 02 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 3:12CR00035-2 |
| ) | |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| ASHLEY MONIQUE POWELL, ) | |
| ) | |
| ) | |
| Defendant. ) | By: B. WAUGH CRIGLER |
| ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3), and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

On February 27, 2013, the Grand Jury charged the defendant in Count One of a Superseding Indictment that beginning on a date unknown to the Grand Jury, but at least sometime in January 2012, and continuing thereafter until October 24, 2012, in the Western District of Virginia, the defendant and Dewayne Roy Wilson did knowingly and intentionally combine, conspire, confederate, and agree with other persons, both known and unknown to the Grand Jury, to knowingly and intentionally distribute and possess with the intent to distribute one hundred (100) grams of a mixture of a substance containing a detectable amount of heroin, a Schedule I control substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B) and all in violation of Title 21, United States Code, Section 846.[1] (Dkt. No. 30.) On April 19, 2013, the defendant appeared before the undersigned to enter her plea to the sole count in which she was charged in this multi-count Superseding Indictment.

---

[1] The defendant further acknowledged that she had the right to proceed before a District Judge, and she expressly consented to proceed before the undersigned. (Dkt. No. 73.)

The defendant was placed under oath and testified that her full legal name is Ashley Monique Powell, she was born on February 17, 1988, and she had made it as far as the 10th grade. The defendant stated that she can read, write, and understand the English language. The defendant further stated that she was fully aware of the nature of the charges against her, the maximum punishment she faces, and the consequences of pleading guilty to the charges. She informed the court that she suffered no physical or mental condition and was not under the influence of any substance that would impair her ability to understand what the court was saying or the nature of the proceedings. She testified that she had received a copy of the Superseding Indictment, and that she had fully discussed with her counsel the charge set forth therein, the maximum punishment for the charge, any defenses thereto, and her case in general. The defendant stated she was before the undersigned to enter into a plea agreement and plead guilty to Count One of the Superseding Indictment. The defendant testified that she understood that the offense set forth in Count One is a felony, and if her plea is accepted, she will be adjudged guilty of that offense.

The defendant acknowledged that the maximum statutory penalty under Count One is a $5,000,000 fine and/or imprisonment for a term of forty years, plus a term of supervised release of at least four years. She also acknowledged that there is a mandatory minimum sentence of imprisonment for a term of five years. The defendant was informed that parole has been abolished, and that if she is sentenced to incarceration, she will not be released on parole, but on supervised release, a violation of which could result in additional incarceration. The government was not seeking either forfeiture or restitution. However, the defendant acknowledged that she may be required to pay restitution and, if so, must make a good faith effort to do so and comply with all the terms set forth in the Plea Agreement discharging her financial responsibility. The defendant also acknowledged that, upon conviction, she will be required to pay a mandatory

special assessment of $100 per felony count. Finally, she agreed that the stipulated facts filed with the court accurately set forth all factual elements sufficient to sustain her plea of guilty.

The defendant was informed that, under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining a reasonable sentence in a criminal case. She was then informed that the Sentencing Guidelines are no longer mandatory, but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that she and her counsel had discussed how the Sentencing Guidelines might apply in her case. She also testified that she understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to review and, if applicable, to object to the reported facts and application of the Guidelines. The defendant stated that she understood that the eventual sentence imposed may be different from any estimate her attorney had given her, or any recommendation by the government, and that the court has the authority to impose a sentence that is either higher or lower than that called for by the Guidelines, so long as the sentence is not greater than the statutory maximum for the offense to which the defendant is pleading guilty. She also acknowledged that, should that occur, she would not be entitled to withdraw her plea of guilty.

The defendant acknowledged that the parties agreed that the United States Sentencing Guidelines Manual is applicable and that she would be free to argue whether certain Guidelines sections should or should not apply; to the extent the arguments are not inconsistent with the stipulations, recommendations, and terms set forth in the Plea Agreement. The defendant acknowledged that the United States agreed to recommend a sentence at the low end of the applicable guideline range and did not object to the application of the "Safety Valve" provision contained in § 5C1.2 of the Guidelines, provided that she met the qualifications set forth in that section. The defendant also stated that she understood that, even if she fully cooperates with law

enforcement, the government is under no obligation to file a motion to reduce her sentence for substantial assistance, and if the government makes the motion, it is up to the court to determine how much of a departure, if any, should be imposed. The defendant stated that she understood that, contingent upon her acceptance of responsibility, continued cooperation in the sentencing process, and fulfillment of her duties under the Plea Agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a), and, if applicable, the government will move that she be given an additional one-level (1) reduction under USSG § 3E1.1(b). The defendant agreed that she had knowingly and voluntarily waived her rights to request or receive any records pertaining to the investigation or prosecution of her case, including any records that may be sought under the Freedom of Information Act or the Privacy Act of 1974. The defendant acknowledged her monetary obligations under the Plea Agreement and that the amounts determined were due immediately and subject to immediate enforcement. She understood that she would provide a complete and truthful financials statement if called upon to do so and agreed that she would not convey anything of value to any person with the authorization of the U.S. Attorney's Office from the time of the signing of this agreement or the date she signs her financial statement, whichever is earlier.

The defendant acknowledged that she was waiving (giving up) her right to have a jury determine beyond a reasonable doubt the facts alleged in the Information, including any facts that could impact sentencing. The defendant testified that she understood that she had the right to a trial by a jury, in addition to the following rights, which will be waived or given up upon pleading guilty:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove her guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear, and cross-examine witnesses;

5. The right to call witnesses to testify on her own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless she voluntarily elects to do so in her own defense;
7. The right to a unanimous guilty verdict; and
8. The right to appeal a guilty verdict.

The defendant testified that she understood that, under the terms of the agreement, she was waiving her rights to appeal, except that she was not waiving her right to appeal or have her attorney file a notice of appeal as to any issue which cannot by law be waived. The defendant acknowledged that she had agreed to waive her right to collaterally attack her conviction or sentence in the case, except to the extent such attack is based on ineffective assistance of counsel or a constitutional defect in the jurisdiction of the court. The defendant was informed that, if she chose to appeal, the government could treat such as a breach of the Plea Agreement and exercise all of its remedial rights under the Plea Agreement, including the right to recharge her.

The defendant testified that she understood that, if found guilty, she may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm. At this time, the parties submitted a signed copy of the Plea Agreement. The defendant acknowledged that it was her signature on the Plea Agreement and her initials on each page. Furthermore, she stated that no one had threatened, intimidated, or forced her to enter the Plea Agreement or plead guilty, and she was pleading guilty of her own free will because she was, in fact, guilty. The defendant also stated that she was satisfied with the advice and representation given to her in this case by her counsel and that she believed the representation had been effective. The defendant asked the court to accept her plea of guilty to Count One. (Dkt. Nos. 75, 76.)

**THE GOVERNMENT'S EVIDENCE**

The defendant and the Government agreed to a Stipulation of Facts. (Dkt. No. 74.) The Stipulation of Facts having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

### INTRODUCTION

The offenses described below occurred within the Western District of Virginia. The following briefly summarizes the facts and circumstances surrounding the defendant's criminal conduct. This statement does not contain all information obtained during the investigation or all facts applicable to an accurate presentence investigation report and sentencing guidelines calculation.

### HISTORICAL TESTIMONY

On October 23, 2012, Jefferson Area Drug Enforcement ("JADE") Agents arrested Individual A on state charges relating to the possession of heroin. JADE Agents transported Individual A to the JADE Office where he was read his *Miranda* rights. Individual A waived his rights and admitted that he used and distributed heroin. Individual A admitted that he would contact "New Jersey" or "Dub," who he later identified as DeWayne Roy Wilson, to supply him with heroin.

Individual A agreed to order heroin from Wilson so that JADE Agents could arrest Wilson. After a series of phone calls, exchanged text messages, and a recorded phone call between Individual A and Wilson's girlfriend, Ashley Powell, Wilson agreed to meet Individual A at a Shell gas station in Waynesboro, Virginia. During the call, Individual A informed Powell that he wanted seven bundles of heroin.

Powell met Wilson sometime in June 2012. Shortly thereafter, Powell and Wilson began living together in Waynesboro, Virginia. While in Waynesboro, Powell rented storage units for Wilson, which she came to know that he used to store heroin and crack cocaine. Powell would also rent cars for Wilson, which he used to deliver his drugs to his customers. A number of Wilson's drug customers would testify that Powell helped Wilson arrange some of the drug deals.

**UNDERCOVER BUY-BUST**

On Tuesday, October 24, 2012, at approximately 2:48 a.m., Individual A, along with JADE Agents, arrived at the Waynesboro Shell Station. Within minutes, a silver 4 door Honda sedan entered the gas station parking lot. JADE Agents later learned that the Honda sedan was rented by Ashley Powell. A black male exited the Honda and began to walk to the store. Individual A informed JADE Agents that the black male was Wilson. JADE Agents then moved to the location and arrested Wilson. At the time of his arrest, Wilson possessed one-hundred (100) bags of heroin and approximately seven (7) grams of crack cocaine. JADE Agents field tested the seized heroin and crack cocaine and both tested positive.

As Wilson was being arrested, other JADE Agents met with Powell, who had arrived with Wilson. Powell was handcuffed and read her *Miranda* rights. Powell agreed to speak with JADE Agents. Powell informed JADE Agents that she talked earlier with Individual A, but Wilson told her what to say. Powell then consented to JADE Agents searching her apartment, where she and Wilson resided for about a month. At her residence, JADE Agents discovered an owe sheet (three of the four names are known to JADE Agents), $700, and marijuana with a strong chemical odor.

7

Furthermore, Powell informed JADE Agents that she had obtained a storage unit for Wilson, at his request, but the rent for the unit was past due. Paperwork found during a consent search of Powell's apartment confirmed that she had rented a storage unit under the name of Ashley Powell, that the unit was located at Hopeman Self Storage in Waynesboro, and that the unit had been foreclosed.

After searching Powell's apartment, JADE Agents went to Hopeman Self Storage. Store managers at Hopeman confirmed that Ashley Powell had rented storage unit B57 on July 26, 2012, but the rent for that unit was past due. Store managers escorted JADE Agents to unit B57. Agents then reviewed the recorded video surveillance of Hopeman Self Storage from the morning of October 24, 2012. At 2:35 a.m., the surveillance video captured Wilson entering the property. By comparing the passcode used to enter the property by Wilson to the business records of Hopeman Self Storage, it was determined that the passcode was associated with unit D04. Unit D04 was rented to an individual named "Shannon Walker" on Monday, October 22, 2012.

The employee who rented unit D04 to "Shannon Walker" remembered the encounter. A person using the identity of "Shannon Walker" had rented unit D04 on October 22, 2012, and paid for the unit in cash. JADE Agents reviewed the video recording that captured the event and positively identified "Shannon Walker" as Ashley Powell. Employees of Hopeman Self Storage accompanied JADE Agents to unit D04. JADE Agents used a key located on the key ring from the Honda to operate the lock on unit D04. The unit was not opened at that time and JADE Agents began the process of obtaining a search warrant.

The Hopeman Storage manager contacted her supervisor and was advised to open the unit in accordance with company policy and the terms of the rental agreement. The effort to secure the search warrant was terminated at that time. JADE Agents accompanied Hopeman storage employees to unit D04 and the Hopeman Storage employees opened the unit. The unit contained a single cardboard box and that box was found to contain a large amount of heroin and a smaller amount of crack cocaine. The crack cocaine and heroin were packaged in a manner identical to the drugs seized on Wilson's person earlier that day. Prior to placing the items in an evidence locker, Agents field tested the items. The items tested positive for cocaine and heroin.

JADE Agents contacted Ashley Powell by telephone. Powell admitted to JADE Agents that she had rented the unit using the name "Shannon Walker" and confirmed that the image captured on the Hopeman Self Storage office video was in fact her. Powell then consented to the search of unit D04. JADE Agents continued to review surveillance video and rental records. On Monday, October 22, 2012, there was a video recording of Wilson entering the facility shortly after unit D04 was rented by Powell. The video recording depicts Wilson driving the same silver Honda Accord associated with his arrest. The video also appears to show a cardboard box in the backseat of the Honda as Wilson entered the storage facility. That box appears to be the same box found in unit D04 on October 24, 2012.

Lab test for substances seized from Wilson's person and storage unit D04 confirmed that the substance was 19.5 grams of heroin. In total, Ashley Powell was responsible for conspiring to distribute in excess of one hundred grams of heroin.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

(1) The defendant is fully competent and capable of entering into a plea agreement and entering an informed plea;

(2) The defendant is aware of the nature of the charges and the consequences of her plea;

(3) The defendant knowingly and voluntarily entered into the Plea Agreement as well as a plea of guilty to the offense in Count One of the Superseding Indictment; and

(4) The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

Thereupon, the defendant was arraigned on Count One of the Superseding Indictment and pled guilty thereto.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned FINDS that defendant has knowingly, voluntarily and freely entered her plea of guilty to Count One of the Superseding Indictment as well as executed the Plea Agreement in this case. The undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Count One of the Superseding Indictment and DIRECTS that a presentence report be prepared. A sentencing hearing hereby is scheduled for July 19, 2013 at 1:00 p.m. before the presiding District Judge in Charlottesville.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within fourteen days (14) after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination

of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within fourteen days could waive appellate review. At the conclusion of the fourteen-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send a certified copy hereof to all counsel of record.

ENTERED: _____
United States Magistrate Judge

5-2-2013
Date